███████████████████████████████████

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | | |
|---|---|---|
| **ARIGNA TECHNOLOGY LIMITED** | § | **Case No. 2:22-cv-00126-JRG-RSP** |
| | § | |
| **v.** | § | **Jury Trial Demanded** |
| | § | |
| **ADC AUTOMOTIVE DISTANCE** | § | **LEAD CASE** |
| **CONTROL SYSTEMS GMBH, et al.** | § | |

| | | |
|---|---|---|
| **ARIGNA TECHNOLOGY LIMITED** | § | **Case No. 2:22-cv-00297-JRG-RSP** |
| | § | |
| **v.** | § | **Jury Trial Demanded** |
| | § | |
| **NISSAN MOTOR CO., LTD. et al.** | § | **MEMBER CASE** |

## DEFENDANTS' RESPONSE IN OPPOSITION TO
## ARIGNA'S OMNIBUS MOTIONS *IN LIMINE*

███████████████████████████████

# TABLE OF CONTENTS

**Page**

1.  Investors, Investor Models, and Attorneys' Fee Arrangements ........................................ 1

2.  Disparaging Descriptions of Arigna's Business Model ................................................. 2

3.  Non-Infringement Arguments Based on Preferred Embodiments ...................................... 4

4.  Comparisons of the NXP MR2001 Chip to Prior Art ............................................... 5

5.  References to Other Litigations Brought By the Parties, their Investors, or Related Entities ........................................................................................................ 7

6.  Relying on "Background Art" to Prove Invalidity By Arguing That It Teaches or Discloses Specific Claim Elements ...................................................................... 8

7.  Argument Suggesting that the Patent Purchase Agreement is Indicative of Damages ..................................................................................................... 9

8.  Exclusion of Any Reference to *Daubert* Opinions in Other Litigations ......................... 11

9.  Exclusion of Total/Lifetime Amount of Compensation ............................................. 13

10. Financial Harm to Either Party ...................................................................... 14

11. Exclusion of Total/Lifetime Amount of Compensation ............................................. 15

12. Precluding Testimony Regarding Subsequent Conversations With Thomas Livernois ................................................................................................... 15

████████████████████████████

## **TABLE OF AUTHORITIES**

**Page(s)**

### **Cases**

*01 Communique Lab'y, Inc. v. Citrix Sys., Inc.*
889 F.3d 735 (Fed. Cir. 2018)......................................................................................7

*Advanced Tech. Incubator, Inc. v. Sharp Corp.*
No. 5:09-CV-135, 2010 WL 11451797 (E.D. Tex. Mar. 31, 2010) ..........................6

*Behler v. Hanlon*
199 F.R.D. 553 (D. Md. 2001)....................................................................................13

*Braun v. Clean Harbors Envtl. Servs.*
2016 WL 7551201 (E.D. Tex. May 6, 2016)..............................................................14

*Colibri Heart Valve LLC v. Medtronic CoreValve LLC*
No. 8:20-CV-00847-DOC-(JDEx), Dkt. 369 (C.D. Cal. Aug. 17, 2022)..................2

*Complete Entertainment Resources LLC v. Live Nation Entertainment, Inc.*
2017 WL 11632203 (C.D. Cal. Oct. 25, 2017)...........................................................11

*Cont'l Circuits LLC v. Intel Corp.*
435 F. Supp. 3d 1014 (D. Ariz. 2020) .......................................................................2

*Digan v. Euro-American Brands, LLC*
2012 WL 668993 (N.D. Ill. Feb. 29, 2012) ...............................................................14

*Eidos Display, LLC v. Chi Mei Innolux Corp.*
2017 WL 2773944 (E.D. Tex. May 26, 2017)............................................................3

*Elbit Sys. Land & C4I Ltd. v. Hughes Network Sys.*
No. 2:15-cv-00037-RWS-RSP, Dkt. 450 (E.D. Tex. July 25, 2017)...................8, 15

*Finjan, Inc. v. Blue Coat Systems, Inc.*
2015 WL 4129193 (N.D. Cal. July 8, 2015)..............................................................8

*Fujitsu Ltd. v. Netgear Inc.*
620 F.3d 1321 (Fed. Cir. 2010)..................................................................................4

*Genband US LLC v. Metaswitch Networks Corp.*
2016 WL 122969 (E.D. Tex. Jan. 9, 2016).................................................................9

*Gree, Inc. v. Supercell Oy*
No. 2:19-cv-00070-JRG-RSP, Dkt. 402 (E.D. Tex. Aug. 24, 2020) ........................15

██████████████████

*Interactive Health LLC v. King Kong USA, Inc.*
  2008 WL 8793640 (C.D. Cal. July 24, 2008) ........................................................6

*Lambert v. Martell*
  2012 WL 33731 (E.D. Cal. Jan 6, 2012) .............................................................13

*Lone Star Tech. Innovations, LLC v. Asustek Computer, Inc.*
  No. 6:19-CV-00059-RWS, Dkt. 196 (E.D. Tex. May 14, 2021)............................7

*Metaswitch Networks Ltd. v. Genband US LLC*
  2016 WL 3618831 (E.D. Tex. Mar. 1, 2016) ........................................................5

*MicroStrategy Inc. v. Business Objects, S.A.*
  429 F.3d 1344 (Fed. Cir. 2005)...........................................................................12

*Mobile Telecomms. Techs., LLC v. LG Elecs. Mobilecomm U.S.A., Inc.*
  2016 WL 3611559 (E.D. Tex. Feb. 4, 2016) ........................................................3

*Multimedia Patent Trust v. Apple Inc.*
  2012 WL 5873711 (S.D. Cal. Nov. 20, 2012) .....................................................11

*Nagle v. Gusman*
  No. 12-CV-1910, 2016 WL 9411379 (E.D. La. Mar. 3, 2016) ............................12

*Parthenon Unified Memory Architecture LLC v. Apple Inc.*
  2016 WL 7670833 (E.D. Tex. Sept. 21, 2016)................................................10, 11

*Rembrandt Wireless Techs., LP v. Samsung Elecs. Co., Ltd.*
  2015 WL 627430 (E.D. Tex. Jan. 30, 2015).................................................3, 7, 13

*Saint Lawrence Commns. LLC v. ZTE Corp.*
  2017 WL 679623 (E.D. Tex. Feb. 21, 2017) .......................................................10

*Scordill v. Louisville Ladder Grp., LLC*
  2004 WL 307475 (E.D. La. Feb. 17, 2004) .........................................................12

*Sound View Innovations, LLC v. Hulu, LLC*
  2020 WL 13267240, at *3-5 (C.D. Cal. June 30, 2020).......................................11

*SSL Servs., LLC v. Citrix Sys.*
  2012 WL 12906091 (E.D. Tex. May 24, 2012)....................................................3, 4

*Tech Pharmacy Servs., LLC v. Alixa Rx LLC*
  2017 WL 3318247 (E.D. Tex. Aug. 3, 2017) ........................................................8

*ThinkOptics, Inc. v. Nintendo of America, Inc.*
  2013 WL 5934471 (E.D. Tex. Sept. 11, 2013)....................................................8, 9

███████████████████████████

*United States v. Terry*
    702 F.2d 299, 316 (2d Cir. 1983)....................................................................................12

*Whitserve, LLC v. Computer Packages, Inc.*
    694 F.3d 10 (Fed. Cir. 2012)........................................................................................10

*Williams v. United States*
    461 U.S. 931 (1983).....................................................................................................12

*Wonderland NurseryGoods Co. v. Thorley Indus., LLC*
    No. CIV.A. 12-196, 2014 WL 241751 (W.D. Pa. Jan. 22, 2014).................................6

*Ziilabs Inc., Ltd. v. Samsung Elecs. Co.*
    No. 2:14-CV-203-JRG-RSP, 2015 WL 7303352 (E.D. Tex. Aug. 25, 2015) ...........9

**<u>Statutes</u>**

Fed. R. Civ. P. 26.................................................................................................................15

Fed. R. Evid. 607.................................................................................................................13

**<u>Other Authorities</u>**

Local Rule CV-7.............................................................................................................13, 15

███████████████████████████████████████████████████

Defendants Continental AG; Conti Temic Microelectronic GmbH; ADC Automotive Distance Control Systems GmbH (collectively "Conti") provides their Response in Opposition to Arigna Technology Limited's ("Arigna") Omnibus Motions *in Limine* (Dkt. 266) (each a "MIL" and, collectively, the "Motion") below.

**1.    Investors, Investor Models, and Attorneys' Fee Arrangements**

Conti agrees as to (ii). As to (i) and (iii), Conti should be permitted to accurately describe to the jury Arigna and its related entities, including the respective roles each played as to the '318 patent purchase and due diligence, and the general structure of those inter-related entities. This Court has previously allowed the introduction of evidence that a plaintiff entity has investors and/or partners. *See Solas OLED Ltd. v. Samsung Elecs. Co. Ltd.*, No. 2:19-cv-00152-JRG, Dkt. 279 at 4 (E.D. Tex. Sept. 30, 2020) ("GRANTED-AS-AGREED . . . Defendants are not precluded from introducing evidence that Solas has investors and/or partners generally").

Arigna's MIL is largely based upon two potential exhibits: DTX-0042 and DTX-0275, which focus on litigations, not on Arigna's particular investors or funding. Motion at 1-2. Investor funding is relevant in this case, given that ██████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████ leading up to this lawsuit which, according to Mr. Yurkerwich, led to the ████████████████████████████

██████████████████████████████████████████████████████

████████████" (ARIGNA-126_00000788; Yurkerwich Rep., ¶171.)    Arigna's dealings with ████████████ central to the acquisition and assertion of the '318 patent, for example:

- DTX-123. Email from Arigna *will call* witness Jerry Padian, subject entitled: "Arigna Technologies Ltd." relaying to ████████████ ████████████████████████████████████████████████████████"

████████████████████████████████████████████

- DTX-137. Email chain with Arigna *will call* witness Jerry Padian, subject entitled: "Arigna Technology Limited" confirming "███████████████████████████████████████████████████████████████████████████████████████████████████"

- DTX-150: Email chain with Arigna *will call* witness Jerry Padian, subject entitled: ███████ describing ███████████████████████████████████████████████████."

Moreover, should Arigna describe its business model, present a "David vs. Goliath narrative," or otherwise suggest to the jury it is small or has limited funds, Conti should not be precluded from countering with evidence relating to ████████████████████████. *See, e.g., Colibri Heart Valve LLC v. Medtronic CoreValve LLC*, No. 8:20-CV-00847-DOC-(JDEx),

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████ *Pinn, Inc. v. Apple, Inc.*, No. SA CV 19-01805-DOC-(JDEx), ██████ (C.D. Cal. July 14, 2021); *see also Cont'l Circuits LLC v. Intel Corp.*, 435 F. Supp. 3d 1014,██████ (D. Ariz. 2020) ████████████████████████ ████████████████████████ Any contrary suggestion to the jury would be untrue and prejudicial to Conti unless Conti is allowed to present evidence and elicit truthful testimony about ████████████████████ In such circumstances, the prejudice to Conti and probative value outweighs any prejudice to Arigna and, therefore, this MIL should be denied as written.

**2.    Disparaging Descriptions of Arigna's Business Model**

Conti has agreed not to use the following terms to describe Arigna: "patent troll," "pirate," "privateer," "paper patent," "playing the lawsuit lottery," and a company that is "playing the lawsuit lottery." However, Arigna's MIL No. 2 should be denied because it is impermissibly and incomprehensibly broad.

First, Conti should be allowed to use non-derogatory terms such as "non-practicing entity" and "patent assertion entity" to describe Arigna. *SSL Servs., LLC v. Citrix Sys.,* Case No. 2:08-cv-158-JRG, 2012 WL 12906091, at *2 (E.D. Tex. May 24, 2012) ("However, Citrix shall be permitted to refer to SSL by the term 'non-practicing entity' or 'non-practicing plaintiff'."). Arigna is not commercially providing any product or service covered by the asserted patent claims. Consistent with this Court's practice, these terms are not disparaging, and Defendants should not be precluded from describing Arigna's business and its status as a non-practicing entity. *See Mobile Telecomms. Techs., LLC v. LG Elecs. Mobilecomm U.S.A., Inc.*, No. 2:13-cv-947-JRG-RSP, 2016 WL 3611559, at *2 (E.D. Tex. Feb. 4, 2016) ("DENIED-IN-PART … as to references, evidence, testimony, or argument describing Plaintiff as a 'non-practicing entity' or 'NPE.'"); *Rembrandt Wireless Techs., LP v. Samsung Elecs. Co., Ltd.,* No. 2:13-cv-213-JRG-RSP, 2015 WL 627430, at *1 (E.D. Tex. Jan. 30, 2015) ("This *limine* shall **not** prevent Defendants from arguing that Plaintiff is a patent assertion entity that does not manufacture or sell products in this field. This *limine* does **not** prohibit Defendants from characterizing Plaintiff as an entity that licenses and litigates, so long as those terms are used in conjunction with one another."); *Eidos Display, LLC v. Chi Mei Innolux Corp.*, No. 6:11-cv-00201-JRG, 2017 WL 2773944, at *1 (E.D. Tex. May 26, 2017) ("[T]he term 'patent assertion entity' or 'non-practicing entity' may be used . . . .").

Second, Arigna's request that Conti be barred from repeated references to its non-practicing status should be denied because it is overbroad and exceedingly vague. Arigna fails to state the number of references that would constitute "repeatedly referencing or emphasizing the fact that Arigna does not practice the patent to create a negative impression of Arigna at trial." Arigna's sensitivity to the term "non-practicing entity" blinds it to the fact that at trial it would likely mean little to the jury and *any* point overly repeated will annoy the jury. As written, MIL

No. 2 would preclude Conti from questioning a witness as to Arigna's non-practicing status if Conti had previewed the issue during its opening argument. Upon questioning a witness to establish that Arigna does not practice the inventions of the '318 patent, MIL No. 2 would also preclude Conti from reminding the jury of Arigna's business model during its closing arguments and connecting that fact to the *Georgia-Pacific* factors. The Court should therefore deny this MIL.

**3.    Non-Infringement Arguments Based on Preferred Embodiments**

The Court should deny Arigna's MIL No. 3 because it is too broad. Conti is readily aware that patent "claims should be compared to the accused product to determine infringement." *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1327 (Fed. Cir. 2010). Conti intends to argue noninfringement based on the '318 patent claims. Thus, Conti has agreed that it would not argue or elicit testimony suggesting that the asserted claims are limited to preferred embodiments in the specification.

In its MIL, however, Arigna objects to ***any*** comparison of the accused products to Figures 1-3 of the '318 patent (and not Figures 4-8[1]). This limitation is improper. Conti will need to elicit testimony and make arguments that include comparing the accused products to the preferred embodiments of the '318 patent to educate the jury regarding the claimed invention and to support Conti's positions regarding non-infringement. *See, e.g.*, Exhibit 1 (Sechen Dep.) at 14:12-16:12, 183:2-184:6, 186:6-15 (although "negative voltage" is not recited in claim 1, using Fig. 1 to explain that claim 1 requires a negative voltage at the bias application terminal, but admitting that accused product always has a positive voltage). This Court has permitted such evidence and testimony. *See SSL Servs., LLC v. Citrix Sys.*, Case No. 2:08-cv-158-JRG, 2012 WL 12906091 (E.D. Tex. May 24, 2012) (denying motion *in limine* on "Comparing Accused Products and Services to the

---

[1] Conti should not be precluded from comparison of the accused products to Figures 4-6 of the '318 patent. These figures describe admitted prior art embodiments and are pertinent not only to Conti's invalidity arguments, but to the *Georgia Pacific* factors that consider the scope and content of the prior art for purposes of damages calculations.

Preferred Embodiments"). For example, a comparison of FIGS. 1 and 3 of the '318 patent to the accused products would be useful in explaining to the jury some of the claimed elements in the asserted claims of the '318 patent, *e.g.*, as examples of the claimed circuit elements that are "connected without interposition of another circuit element" to other respective claimed circuit elements, as construed by the Court. Comparing the claimed direct connections shown in FIGS. 1 and 3 with the indirect connections of the accused products is critical, especially given that Arigna admits it cannot demonstrate literal infringement and is relying on the Doctrine of Equivalents. Arigna's MIL No. 3 should therefore be denied.

Moreover, Conti recognizes that parties should generally not argue that a product ***does not infringe*** based on a comparison of the accused product with preferred embodiments, however, referring to the preferred embodiments in other contexts, such as in explaining the patent should be permitted. *See, e.g., Metaswitch Networks Ltd. v. Genband US LLC*, No. 2:14-CV-744-JRG-RSP, 2016 WL 3618831, at *4 (E.D. Tex. Mar. 1, 2016) ("No party may argue that the claims are limited to a specific embodiment or compare an accused product to a specific embodiment to argue infringement or non-infringement, but parties may refer to an embodiment in the context of explaining the patent."). Here, for example, the Court's claim construction limited the term "connected to" as meaning "connected without interposition of another circuit element" such that it "excludes indirect connections between the recited ends of the circuit components." Dkt. 33, 10. Consistent with the Court's construction, Conti should be permitted to use FIGS. 1 and 3 as examples of circuit elements that are "connected to" each other in the context of the '318 patent.

**4.    Comparisons of the NXP MR2001 Chip to Prior Art**

Arigna's MIL No. 4 is overbroad and should be denied. The cases it cites, *Tate* and *Zenith* are inapposite to the facts of this action. In *Tate* and *Zenith*, the defendants sought to compare the accused products to ***disputed*** prior art, *i.e.*, other references that defendants contended were prior

art. In the present case, however, Conti seeks to compare the NXP MR2001 chip with ***undisputed*** prior art, *i.e.*, the "Conventional Art" depicted in FIGS. 4-8 of the '318 patent. Because Conti seeks to compare the NXP MR2001 chip with what the '318 patent unambiguously characterizes as prior art, the probative value is not outweighed by the danger of unfair prejudice, confusion of the issues, and/or misleading the jury. For instance, because Conti does not seek to compare the accused product to another prior art patent, there is no risk that jurors will assume the accused products do not infringe based on the existence of the other patent.

Second, comparisons of the NXP MR2001 chip to the '318 patent's admitted prior art, with respect to the scope of the Asserted Claims as alleged by Arigna, are relevant to show that certain features of the admitted prior art cover the elements or limitations of the Asserted Claims. In the present case, for example, Conti should not be precluded from comparing the NXP MR2001 chip to this prior art in support of its ensnarement defense to Arigna's doctrine of equivalents theory. *Interactive Health LLC v. King Kong USA, Inc.*, No. CV 06-1902-VBF (PLAx), 2008 WL 8793640, at *8 (C.D. Cal. July 24, 2008) (denying motion *in limine* regarding "Other Patents Covering the Accused Devices[,]" noting relevance to "the reach of a patent under the doctrine of equivalents" and to willfulness). In addition, Conti should be permitted to compare the NXP MR2001 chip to the '318 patent's admitted prior art not only as part of Conti's invalidity arguments, but also with the *Georgia Pacific* factors that consider the scope and content of the prior art for purposes of damages calculations. *See, e.g., Advanced Tech. Incubator, Inc. v. Sharp Corp.,* No. 5:09-CV-135, 2010 WL 11451797, at *2 (E.D. Tex. Mar. 31, 2010) ("Defendants can use their own patents or third party patents to argue invalidity and lack of willfulness . . . ."); *Wonderland NurseryGoods Co. v. Thorley Indus., LLC*, No. CIV.A. 12-196, 2014 WL 241751, at *2 (W.D. Pa. Jan. 22, 2014) (finding defendants' patents admissible and relevant to *Georgia-Pacific* factor 13).

Third, at a minimum, Conti should be permitted to compare the NXP MR2001 chip to the prior art to examine the inconsistent positions taken by Arigna's experts in interpreting the scope of the Asserted Claims. *See 01 Communique Lab'y, Inc. v. Citrix Sys., Inc.*, 889 F.3d 735, 742 (Fed. Cir. 2018) ("Cases such as *Tate* and *Zenith* make clear that an accused infringer cannot defeat a claim of literal infringement or establish invalidity merely by pointing to similarities between an accused product and the prior art. This does not, however, preclude a litigant from arguing that if a claim term must be broadly interpreted to read on an accused device, then this same broad construction will read on the prior art."); *see also Lone Star Tech. Innovations, LLC v. Asustek Computer, Inc.*, No. 6:19-CV-00059-RWS, Dkt. 196 at 8 (E.D. Tex. May 14, 2021) (precluding defendant from asserting "a 'practicing the prior art' defense" but allowing defendant to "argue that applying a claim limitation in a certain way on infringement means that the prior art also meets that claim limitation"); *Semcon IP Inc. v. Huawei Device USA Inc.*, No. 2:16-cv-00437-JRG-RSP, Dkt. 490 at 3 (E.D. Tex. Dec. 15, 2017) (precluding defendant from comparing prior art and accused product "for purposes of arguing noninfringement" or "that it is just practicing the prior art," but "nothing precludes [defendant] from highlighting any inconsistency in [the patentee's] validity and infringement positions"). For the above-stated reasons, this MIL should be denied.

5.    **References to Other Litigations Brought By the Parties, their Investors, or Related Entities**

Conti has agreed to not refer to Arigna as a serial litigant by referring to Arigna as a "troll" or a "pirate." However, consistent with this Court's practice, Conti should be permitted to describe Arigna's licensing and litigating business model and its status as a non-practicing entity as explained in greater detail above in regard to MIL No. 2. *See, e.g., Rembrandt Wireless*, 2015 WL 627430, at *1 ("This *limine* does ***not*** prohibit Defendants from characterizing Plaintiff as an entity that licenses and litigates, so long as those terms are used in conjunction with one another.").

██████████████████████████████████████████████████

Furthermore, with respect to MIL No. 5, Arigna seeks to have the best of both worlds. Arigna's damages expert has already placed the other litigations at issue by discussing Arigna's history and policies of ████████████████████████████████████████████████████ ███████████████████████████████████████. Yet, Arigna objects to any evidence of such litigations being introduced at trial. Arigna cannot have it both ways.

Furthermore, a limiting instruction overcomes Arigna's claim of potential prejudice. Here, the jury can be instructed that the existence of other litigations does not make infringement more or less likely in this case. *See Finjan, Inc. v. Blue Coat Systems, Inc.*, No. 13–cv–03999–BLF, 2015 WL 4129193 at *1 (N.D. Cal. July 8, 2015) (denying motion to exclude co-pending litigation after finding evidence relevant to the determination of a reasonable royalty, and ordering defendant to propose an appropriate limiting instruction). Accordingly, MIL No. 5 should be denied.

**6.    Relying on "Background Art" to Prove Invalidity By Arguing That It Teaches or Discloses Specific Claim Elements**

It appears that Arigna would agree that courts in this District have routinely admitted state of the art evidence not disclosed in L.P.R 3-3 contentions for the purpose of (1) background material relevant to the technology at issue; (2) state of the art; and (3) establishing what one of skill in the art would have known at the time of the invention. (Arigna MIL at 8-9); *see, e.g., ThinkOptics, Inc. v. Nintendo of America, Inc.*, No. 6:11-cv-455, 2013 WL 5934471, at *1 n.1 (E.D. Tex. Sept. 11, 2013); *see also Tech Pharmacy Servs., LLC v. Alixa Rx LLC*, No. 4:15-cv-766, 2017 WL 3318247, at *2 (E.D. Tex. Aug. 3, 2017) (permitting use of reference that was excluded from a party's invalidity contentions "to establish knowledge of a POSITA"); *Elbit Sys. Land & C4I Ltd. v. Hughes Network Sys.*, No. 2:15-cv-00037-RWS-RSP, Dkt. 450 at 2 (E.D. Tex. July 25, 2017) ("Defendant is otherwise not precluded from relying on uncharted prior art in the context of background material relevant to the technology at issue, state of the art, or establishing

███████████████████████████████████

what one of skill in the art would have known at the time of the invention."); *Ziilabs Inc., Ltd. v. Samsung Elecs. Co.*, No. 2:14-CV-203-JRG-RSP, 2015 WL 7303352, at *2 (E.D. Tex. Aug. 25, 2015) (denying motion to strike prior art used to show "(1) background material relevant to the technology at issue; (2) state of the art; and (3) establishing what one of skill in the art would have known at the time of the invention").

Arigna's MIL, however, is overbroad and would prevent Conti from using uncharted prior art for additional, appropriate purposes. For instance, Conti may use uncharted prior art to demonstrate motivation to combine references. *See, e.g., ThinkOptics,* 2013 WL 5934471, at *1 n.1. In addition, Conti may also properly introduce evidence of unelected prior art references with respect to the issue of damages as evidence of non-infringing alternatives. *See, e.g., Genband US LLC v. Metaswitch Networks Corp.*, No. 2:14-CV-33-JRG-RSP, 2016 WL 122969, at *3 (E.D. Tex. Jan. 9, 2016). Thus, Arigna's MIL should be denied because the broad scope of this motion would bar Conti from making such arguments.

7.    **Argument Suggesting that the Patent Purchase Agreement is Indicative of Damages**

Conti should be permitted to reference to and use the purchase price of the patent portfolio, paid by Arigna, in the Patent Purchase Agreement (PPA) in opening or closing statements, or on cross examination of Arigna's witness.

First, it is a relevant fact that ███████████████████████████████████ ██████ and creates no unfair prejudice. Conti can introduce this transaction through Arigna witnesses alone. Further, Conti's damages expert, Mr. Gutzler, expressly relied upon the PPA for *Georgia Pacific* Factors 1, 2, and 12 (Comparable Licenses), concluding:

███████████████████████████████████



Exhibit 2, ¶¶205- 217. Moreover, Mr. Gutzler does not need to rely on the PPA between Arigna and Mitsubishi, or the $█████ █████ in *calculating* a reasonable royalty, for the PPA to be introduced and used in trial. Courts "do not require that witnesses use any or all of the *Georgia-Pacific* factors when testifying about damages in patent cases." *Whitserve, LLC v. Computer Packages, Inc.,* 694 F.3d 10, 31 (Fed. Cir. 2012). "An expert may reasonably conclude [] that such sales agreements are less relevant and ultimately not probative of a reasonable royalty arrived at from the hypothetical negotiation." *Parthenon Unified Memory Architecture LLC v. Apple Inc.*, No. 2:15-CV-621-JRG-RSP, 2016 WL 7670833, at *5 (E.D. Tex. Sept. 21, 2016). The real question is whether the PPA and/or the $█████ █████ are relevant evidence to the hypothetical negotiation since relevant evidence should not be excluded from the jury. *See Saint Lawrence Communs. LLC v. ZTE Corp.*, No. 2:15-cv-349-JRG, 2017 WL 679623, at *3 (E.D. Tex. Feb. 21, 2017) ("The real question is whether rates charged by Motorola is relevant evidence to the hypothetical negotiation. The Court finds that Mr. Weinstein's report adequately explains the relevance of this evidence. Accordingly, even if evidence of FRAND rates Motorola charges for its own cellular technology may not explicitly fall within Factor 2 by its express terms, it is neither irrelevant nor unreliable evidence. Therefore, it should not be excluded."). Conti's expert, Mr. Gutzler, opined that the █████████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████ Exhibit 2 (Gutzler Rpt. at ¶216; *see also* ¶¶130-133, 216-217).

████████████████████████████████████████████████

Second, the PPA includes ███████████████████████████. This Court has previously allowed the introduction of a patent purchase agreement for the jury to consider when calculating a reasonable royalty, even when an expert states that such agreements were not comparable. *See Parthenon*, 2016 WL 7670833, at \*1-2 (holding that an expert may rely on patent purchase agreements but is not required to do so, and regardless of whether an expert's opinion is based on the patent purchase agreements or an expert opines that such patent purchase agreements are not comparable, it is "up to the jury to determine the evidentiary value of such agreements and [the expert's] reliance on the agreements at trial"). Thus, the Court should deny Arigna's MIL No. 7 because it has no support in the law.

**8.    Exclusion of Any Reference to *Daubert* Opinions in Other Litigations**

Arigna has presented Mr. David E. Yurkerwich as an expert on damages, and several courts have excluded some, or all, of Mr. Yurkerwich's opinions as unreliable. *See Sound View Innovations, LLC v. Hulu, LLC*, No. LA CV17-04146 JAK (PLAx), 2020 WL 13267240, at \*3-5 (C.D. Cal. June 30, 2020) (excluding Yurkerwich's expert testimony because his "methodology is insufficiently supported"); *Sound View Innovations, LLC v. Hulu, LLC*, Case No. LA CV17-04146 JAK (PLAx), 2019 WL 9047211, at \*10-11 (C.D. Cal. Nov. 1, 2019) (granting-in-part *Daubert* motion to exclude Mr. Yurkerwich's opinion); *Complete Entertainment Resources LLC v. Live Nation Entertainment, Inc.*, No. CV 15-9814 DSF (AGRx), 2017 WL 11632203, at\*2-3 (C.D. Cal. Oct. 25, 2017) (granting-in-part *Daubert* motion to exclude Mr. Yurkerwich's testimony because a certain "calculation is methodologically flawed" and other testimony " lacks sufficient foundation"); *Multimedia Patent Trust v. Apple Inc*., No. 10–CV–2618–H (KSC), 2012 WL 5873711, at \*6 (S.D. Cal. Nov. 20, 2012) (granting-in-part *Daubert* motion to exclude Mr. Yurkerwich's testimony and damages analysis); *MicroStrategy Inc. v. Business Objects, S.A.*, 429 F.3d 1344, 1353 (Fed. Cir. 2005) (referring to district court's exclusion of Yurkerwich's initial

expert report "due to the use of a flawed methodology").

Conti agrees that references to and the number of prior *Daubert* orders should not be raised at trial. But Arigna's motion seeking to preclude "any reference" would also preclude permissible circumstances of such use—notably, that of impeachment. For example, if Mr. Yurkerwich testifies on when apportionment is required, or when it is not, or what factors lead to a conclusion that a certain license is comparable, or when it is not—and that testimony contradicts his prior opinions and testimony in a case, impeachment as to those statements as well as the court's rulings on that same testimony should be allowed.

Mr. Yurkerwich's prior litigation experience is also highly probative evidence that should be permitted not only for impeachment purposes but to show bias, credibility, and the weight his testimony should be given. *See Nagle v. Gusman*, No. 12-CV-1910, 2016 WL 9411379, at *1 (E.D. La. Mar. 3, 2016) (finding that evidence regarding the expert-in-question's "experience in a prior lawsuit is relevant to his potential bias and credibility as an expert witness in this case"); *Scordill v. Louisville Ladder Grp., LLC*, No. CIV.A. 02-2565, 2004 WL 307475, at *12 (E.D. La. Feb. 17, 2004) ("Use of the previous exclusion of an expert's testimony is permissible to impeach the credibility and credentials of the expert."); *United States v. Terry*, 702 F.2d 299, 316 (2d Cir. 1983), *cert. denied*, *Williams v. United States*, 461 U.S. 931 (1983) (finding a judge's criticism of expert witness' testimony at a prior trial relevant to the credibility of his testimony at the current trial).

Moreover, if Arigna "opens the door" by referring to Mr. Yurkerwich's prior testimonial experience and refers to his acceptance by other courts, Conti should be allowed to introduce evidence about courts' prior rejection of Mr. Yurkerwich's analysis and opinions. *Rembrandt Wireless Techs., LP v. Samsung Elecs. Co.*, No. 2:13-CV-213-JRG-RSP, 2015 WL 627430, at *2 (E.D. Tex. Jan. 31, 2015) ("To the extent Plaintiff does not elicit testimony or proffer evidence

that Mr. Weinstein has been accepted by other courts, Defendants similarly shall not elicit testimony or proffer any evidence from other cases where his testimony was limited or excluded.").

9.    **Exclusion of Total/Lifetime Amount of Compensation[2]**

Conti should be permitted to question Arigna's experts and consultants about their total litigation-related compensation. Arigna's compensation paid to its experts and consultants is relevant to bias. *See* Fed. R. Evid. 607. Arigna's expert witnesses have been retained in other matters for Arigna, including the following:



Therefore, evidence concerning total compensation paid by Arigna to each of its experts is relevant to witness credibility. *See Lambert v. Martell*, No. 10-cv-02587, 2012 WL 33731, at *11 (E.D. Cal. Jan 6, 2012) ("It is within the bounds of proper argument to attack the credibility of defense expert witnesses, and the weight to be given their testimony, based on the witnesses' compensation and the fact of their employment.") (internal citation omitted); *see also Behler v. Hanlon*, 199 F.R.D. 553, 557 (D. Md. 2001) ("the fact that an expert witness may have a 20 year history of earning significant income testifying primarily as a witness for defendants … certainly fits within recognized examples of bias/prejudice impeachment"). Moreover, the prejudice to Conti if precluded from presenting evidence or eliciting testimony as to bias outweighs any privacy interest Arigna's expert witnesses may have regarding their compensation. *See Digan v. Euro-*

---

[2] Arigna's MIL No. 9 should also be denied as Arigna did not provide proper notice of this motion. *See* Exhibit 3, pp. 1-2 (Arigna MILs), 8 (proposed agreed MILs). As a result, the parties did not meet and confer as required by Local Rule CV-7 and as Arigna's counsel certified. Motion at 15.

*American Brands, LLC*, No.10-cv 799, 2012 WL 668993, at *5 (N.D. Ill. Feb. 29, 2012) (overruling privacy objection where "[a]s potential witnesses for [Defendant], this information is relevant to these witnesses' possible bias"). Because of the resulting prejudice Conti would sustain should it be precluded from submitting relevant evidence of bias, this MIL should be denied.

**10.    Financial Harm to Either Party**

Conti proposed the following MIL: "Result of Verdict. Conti intends to move to preclude Arigna from eliciting testimony that a failure to find liability of award of damages could hard Arigna." Exhibit 4, MIL No. 8. Arigna did not simply propose that this MIL be mutual. Instead, Arigna expanded the scope to preclude "any evidence or testimony, or make attorney argument, comments, insinuation, or references to the possible consequences of a verdict in any parties' favor, including … an award of enhanced damages, an award of attorney's fees, or arguments that a verdict would result in (1) consumers paying more for devices; (2) the economy being negatively impacted; … or ([3]) firings or layoffs." As such, it is too imprecise and overbroad, in particular as to what "the *possible* consequences of a verdict" entails. For example, a consequence of a jury verdict of infringement would be Arigna's entitlement to an award of damages.

While Arigna provides three examples, it does not appear to limit the scope of its MIL to exclude just those three arguments, and Arigna offers no basis to conclude that even the examples of "consequences" it offers in its MIL No. 10 could not be cured by appropriate instructions from the Court. *See Braun v. Clean Harbors Envtl. Servs.*, No. 1:14-CV-524, 2016 WL 7551201, at *11-12 (E.D. Tex. May 6, 2016) (denying-in-part defendant's motion *in limine* requesting the Court to prohibit arguments such as "a verdict in favor of Plaintiff will be important, because it will send a message, while a verdict in favor of Defendant, will not be important," and permitting the patentee to make such arguments as long as Plaintiff "refrains from overly inflammatory arguments or personal attacks on character"). Arigna's MIL No. 10 should be denied.

14

11.     **Exclusion of Total/Lifetime Amount of Compensation[3]**

For the same reasons above in response to MIL No. 9, MIL No. 11 should be denied.

12.     **Precluding Testimony Regarding Subsequent Conversations With Thomas Livernois[4]**

Arigna's MIL No. 12 should be denied as unnecessary given that expert witnesses are already restricted to the scope of their reports pursuant to Fed. R. Civ. P. 26(a)(2)(B). *See Elbit*, No. 2:15-cv-00037-RWS-RSP, Dkt. 450 at 2 ("The motion is otherwise denied with the understanding that expert testimony is always limited to the disclosure the report."); *Gree, Inc. v. Supercell Oy*, No. 2:19-cv-00070-JRG-RSP, Dkt. 402 at 3 (E.D. Tex. Aug. 24, 2020) (denying motion in limine to exclude evidence not disclosed in expert reports as unnecessary because "[u]nder the rules, expert witnesses are always confined to the scope of their reports"); *see also USAA v. PNC Bank N.A.*, No. 2:20-CV-00319-JRG-RSP, Dkt. 579 at 10-11 (E.D. Tex. Apr. 11, 2022) (denying motion *in limine* for "[n]o evidence or argument about expert testimony outside the scope of proffered opinions" as unnecessary); *Personalized Media Comm'ns, LLC v. Apple, Inc.*, No. 2:15-cv-01366-JRG-RSP, Dkt. 510 at 10 (E.D. Tex. Mar. 2, 2021) (denying motion *in limine* to preclude testimony outside to the scope of expert reports as unnecessary); *Salazar v. HTC Corp.*, 2:16-CV-01096-JRG-RSP, Dkt. 236 at 11 (E.D. Tex. Apr. 17, 2018).

Moreover, MIL No. 12 should be denied as moot given Defendants representation that "[i]f Mr. Leaphart is substituted then Dr. Livernois will not be mentioned at trial at all," Arigna's recognition of Defendants' representation and withdrawal of its opposition to substitute, and the Court's Order regarding the same. Dkt. 283.

---

[3] For the same reasons set forth with MIL No. 9, *supra* n. 2, Arigna's MIL No. 11 should be denied.
[4] Arigna's MIL No. 12 should also be denied as Arigna did not provide proper notice of this motion. *See* Exhibit 3, pp. 1-2 (Arigna MILs), 8 (proposed agreed MILs). As such, the parties did not meet and confer as required by Local Rule CV-7 and as Arigna's counsel certified. Motion at 15.

███████████████████████████████

Dated: October 3, 2022                    */s/ John R. Keville*
                                          John R. Keville
                                          Texas State Bar No. 00794085
                                          jkeville@sheppardmullin.com
                                          Michelle C. Replogle
                                          Texas State Bar No. 24034648
                                          mreplogle@sheppardmullin.com
                                          Robert L. Green
                                          Texas State Bar No. 24087625
                                          rgreen@sheppardmullin.com
                                          Michael C. Krill
                                          mkrill@sheppardmullin.com
                                          SHEPPARD, MULLIN, RICHTER &
                                          HAMPTON, LLP
                                          700 Louisiana Street, Suite 2750
                                          Houston, TX 77002-2791
                                          Telephone: (713) 431-7100
                                          Facsimile:(713) 431-7101

                                          Andrew J. Koopman
                                          Christopher H. Blaszkowski
                                          RatnerPrestia
                                          2200 Renaissance Blvd. Ste. 350
                                          King of Prussia, PA 19406
                                          Telephone: 610-407-0700
                                          Facsimile: 610-407-0701
                                          akoopman@ratnerprestia.com
                                          cblaszkowski@ratnerprestia.com
                                          *Attorneys for Defendants, Continental AG,
                                          Conti Temic Microelectronic GmbH, and
                                          ADC Automotive Distance Control Systems
                                          GmbH*



## <u>CERTIFICATE OF SERVICE</u>

This is to certify that a true and correct copy of this document and exhibits have been served on all counsel of record via electronic mail on this 3rd day of October, 2022.

*/s/ John R. Keville*