IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| ARIGNA TECHNOLOGY LIMITED, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Case No. 2:22-cv-00126-JRG-RSP |
| | § | |
| NISSAN MOTOR COMPANY, LTD., ET AL., | § | |
| | § | |
| *Defendants*. | § | |

## MEMORANDUM ORDER

Before the Court defendants[1] move to exclude portions of plaintiff Arigna Technologies Ltd.'s technical expert Dr. Carl Sechen's report. **Dkt. No. 160**. For the following reasons, the motion is **DENIED**.

**I.   Background**

On February 18, 2021, Arigna filed suit against various vehicle manufacturers alleging infringement of independent claims 1 and 2 of U.S. Patent No. 7,397,318 ("'318 Patent") directed to a voltage-controlled oscillator incorporated into radar modules provided by vehicle parts manufacturer Continental. Case '54 Dkt. No. 1; *see also id.* at Dkt. No. 28 (first amended complaint filed March 9, 2021, adding defendant GM).[2]

**II.  Standard**

Rule 26(a) requires a party to disclose during discovery information "considered by" testifying experts. Fed.R.Civ.P. 26. An expert report must contain "a complete statement of all

---

[1] Continental AG; Conti Temic Microelectronic GmbH; and ADC Automotive Distance Control Systems GmbH (collectively, "Continental"); Nissan Motor Co., Ltd. and Nissan North America, Inc. (collectively "Nissan"); Tesla, Inc. and Tesla Motors TX, Inc. (collectively "Tesla"); Toyota Motor Corporation and Toyota Motor North America, Inc. (collectively "Toyota"); and General Motors LLC ("GM").

[2] For procedural reasons not relevant here, Case No. 2:22-CV-00126 ("Case '126") was born by severance of the instant defendants from Case No. 2:21-CV-00054 ("Case '54"). Compare Case '54 Dkt. No. 467 with Case '126 Dkt. 1.

opinions the witness will express and the basis and reasons for them" and "the data or other information considered by the witness in forming them." *Id.* 26(a)(2)(B).

An expert witness may provide opinion testimony if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. This evidentiary rule requires a district court to make a preliminary determination, when requested, as to whether the requirements of the rule are satisfied with regard to a particular expert's proposed testimony. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999); *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592–93 (1993). District courts are accorded broad discretion in making Rule 702 determinations of admissibility. *Kumho Tire*, 526 U.S. at 152 ("the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable"). Although there are various factors that the district court may consider in determining admissibility the ultimate inquiry is whether the expert's testimony is sufficiently reliable and relevant to be helpful to the finder of fact and thus to warrant admission at trial. *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010).

Importantly, in a jury trial setting, the Court's role under *Daubert* is not to weigh the expert testimony to the point of supplanting the jury's fact-finding role; instead, the Court's role is limited to that of a gatekeeper, ensuring that the evidence in dispute is at least sufficiently reliable and relevant to the issue before the jury that it is appropriate for the jury's consideration. *See Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1391–92 (Fed. Cir. 2003) (applying Fifth Circuit law) ("When, as here, the parties' experts rely on conflicting sets of facts, it is not the

role of the trial court to evaluate the correctness of facts underlying one expert's testimony."); *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 249–50 (5th Cir. 2002). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

### III.  Analysis

Defendants seek to exclude portions of Sechen's expert report claiming it ignores the Court's claim construction of "connected to" and "grounded." The Court construed "connected to" as "connected without interposition of another circuit element," Dkt. No. 33 pp 7-10, and construed "grounded" as "connected to a voltage reference point in a circuit," *Id.* at pp 11-12.

#### A.  Connected to

In light of the Court's claim construction of "connected to" as "connected without interposition of another circuit element," Arigna moved to amend the complaint to include an infringement theory under the doctrine of equivalents because the accused circuit includes interposed elements. Defendants argue that Federal Circuit precedent dictates that an infringement theory under the doctrine of equivalents may not directly contradict the court's claim construction. Dkt. No. 160 p 8 (citing *Augme Techs., Inc. v. Yahoo! Inc.*, 755 F.3d 1326, 1335 (Fed. Cir. 2014); and *Southco, Inc. v. Fivetech Tech. Inc.*, 611 F. App'x 681, 686 (Fed. Cir. 2015) (citing *Augme*, 755 F.3d at 1335 without analysis)). However, the Defendants' reading of *Augme* and *Southco* is unduly restrictive.

*Augme* does not pertain to the admissibility of expert testimony, but instead affirmed summary judgment of non-infringement under the doctrine of equivalents. 755 F.3d at 1335-38. Therein, the Federal Circuit found that neither the expert nor the record satisfied one prong of the

3

function-way-result test. *Id.* at 1335-36. In the instant case, Dr. Sechen's report does provide a complete function-way-result analysis. Further, in *Augme* the patents at issue "make clear" that the claim limitation and the accused equivalent element were "opposites." *Id.* at 1335.

*Southco* similarly does not pertain to the admissibility of expert testimony, but instead affirmed summary judgment of non-infringement under the doctrine of equivalents. 611 F. App'x at 686. Therein, the Federal Circuit found that "[a]n indirect attachment" under a doctrine of equivalents theory "would not satisfy the limitation that the 'the threaded shaft captivation means prevents the ferrule and the knob from separating' because if the ferrule and knob are already separated—i.e., not directly attached—the threaded shaft captivation means cannot prevent them from separating." *Id.* In other words, indirect attachment was precluded by the additional claim limitation because "the claim language differentiates between direct attachment and indirect attachment." *Id.*

Read in this light, *Augme* and *Southco* further develop the case law of specific exclusion as a limit on the doctrine of equivalents. *E.g. SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.,* 242 F.3d 1337, 1346–47 (Fed.Cir.2001); *Dolly, Inc. v. Spalding & Evenflo Cos.,* 16 F.3d 394, 400 (Fed.Cir.1994) ("[T]he concept of equivalency cannot embrace a structure that is specifically excluded from the scope of the claims."). However, specific exclusion does not apply simply because literal infringement fails to satisfy a claim limitation. *E.g. Ethicon Endo–Surgery, Inc. v. U.S. Surgical Corp.,* 149 F.3d 1309, 1317-19 (Fed.Cir.1998); see also *Augme*, 755 F.3d at 1335 (comparing *Dolly*, 16 F.3d at 400 and *SciMed*, 242 F.3d at 1346-47 against *Ethicon*, 149 F.3d 1317-19). In fact, the doctrine of equivalents by its very nature contemplates that literal infringement fails to satisfy at least one claim limitation. *Graver Tank & Mfg. Co. v. Linde Air Products Co.*, 339 U.S. 605, 608 (1950).

As the Federal Circuit noted in *Cadence Pharmaceuticals Inc. v. Exela Pharmsci Inc.*, 780 F.3d 1364, 1372 (Fed. Cir. 2015):

> "Characterizing an element of an accused product as the 'antithesis' of a claimed element is also a conclusion that should not be used to overlook the factual analysis required to establish whether the differences between a claimed limitation and an accused structure or step are substantial *vel non*. The determination of equivalence depends not on labels like 'vitiation' and 'antithesis' but on the proper assessment of the language of the claimed limitation and the substantiality of whatever relevant differences may exist in the accused structure."

In claim construction, the Court found "nothing in the specification shows 'connected to' contemplates interposing circuit elements." Dkt. No. 33 pp 8-9. But that conclusion falls short of a finding that the specifications or claims exclude interposed circuit elements. This distinction is further supported by the Court's reliance on *ICM Controls Corp. v. Honeywell Int'l, Inc.*, 256 F. Supp. 3d 173, 201 (N.D.N.Y. 2017) signaling the availability of the doctrine of equivalents to address the interposition of circuit elements in the accused device. Dkt. No. 33 p 8 n 2. The defendants have not identified any language within the patent that operates as a specific exclusion of interposed circuit elements. Accordingly, Sechen's report does not ignore the claim construction. Instead, it provides a doctrine of equivalents analysis that is not precluded by the specifications or the claim language. *E.g.*, *Ethicon*, 149 F.3d at 1317-19.

### B. Grounded

The Court construed "grounded" as "connected to a voltage reference point in a circuit." Defendants argue Sechen's analysis is unreliable with respect to the construction of "grounded" for three reasons.

First, Defendants argue that Sechen's report is unreliable because it identifies entirely different circuit elements of the same circuit to satisfy the "grounded" limitation of claim 1 and claim 2. However, Arigna responds that "Sechen has never argued that the accused products

5

simultaneously infringe claims 1 and 2." Dkt. No. 192 p 14. In other words, Sechen presents alternative theories as to how the same circuit may satisfy either claim 1 or 2. Whether the alternative theories present internal inconsistencies goes to the credibility of Sechen report, but not its reliability. Further, the circuit elements identified, Vcc for claim 1 and Vss for claim 2, are voltage supply terminals without any time-varying component and thus operable as a reference point for an alternating current. Defendants do not refute this fact.

Second, Defendants argue that Sechen's report is unreliable with respect to claim 1 because it identifies circuit element Vcc of the accused product as satisfying two different limitations of claim 1. Arigna responds that the argument is an attempt to impose a claim construction that was not previously advanced and that defendants are simply disagreeing with Sechen's analysis that the Vcc may satisfy two limitations of claim 1. Such disagreements do not render Sechen's report unreliable.

Third, Defendants argue that Sechen's report is unreliable as to claim 1 because claim 1 requires the bias application terminal (identified as reference point X in figure 1 of the '319 Patent) to apply a negative voltage whereas the alleged bias application terminal of the accused product (identified as reference point Q24 in the schematic of the accused product) applies a positive voltage. However, Sechen's testimony that claim 1 implicitly applies a negative voltage at the bias application terminal was made in context of a discussion regarding an embodiment of claim 1. *Id.* 15:21-16:25. There is not such element in Claim 1. Further, Sechen denies that the benefits of claim 1 are not realized in the accused product. *Id.* at 185:5-9, 185:18-186:5. To the extent defendants describe this testimony as inconsistent, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the

6

traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596 (1993).

## IV. Conclusion

For the reasons expressed above, the defendants' motion to exclude portions of Arigna's technical expert Dr. Carl Sechen's report, **Dkt. No. 160**, is **DENIED**.

**SIGNED this 24th day of October, 2022.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE