IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

MARSHALL DIVISION

| | | |
|---|---|---|
| ARIGNA TECHNOLOGY LIMITED, | § § § § § § § § § § § | |
| *Plaintiff*, | | |
| v. | | Case No. 2:22-cv-00126-JRG-RSP |
| NISSAN MOTOR COMPANY, LTD., ET AL., | | |
| *Defendants*. | | |

## MEMORANDUM ORDER

Before the Court defendants[1] move to exclude potions of plaintiff Arigna Technologies, Ltd.'s damages expert report, provided by David E. Yurkerwich. **Dkt. Nos. 162, 252**. For the following reasons, the motions are **DENIED**.

**I.  Background and Procedural Posture**

On February 18, 2021, Arigna filed suit against various vehicle manufacturers alleging infringement of U.S. Patent No. 7,397,318 ("'318 Patent") directed to a voltage-controlled oscillator ("VCO"). Arigna alleges that the radar module ARS4 sold by Continental to vehicle

---

[1] Continental AG; Conti Temic Microelectronic GmbH; and ADC Automotive Distance Control Systems GmbH (collectively, "Continental"); Nissan Motor Co., Ltd. and Nissan North America, Inc. (collectively "Nissan"); Tesla, Inc. and Tesla Motors TX, Inc. (collectively "Tesla"); Toyota Motor Corporation and Toyota Motor North America, Inc. (collectively "Toyota"); and General Motors LLC ("GM").

manufacturers contains a VCO practicing the '318 Patent. Case No. 2:21-cv-054 Dkt. Nos. 1; see also *id.* at Dkt. No. 28 (first amended complaint filed March 9, 2021, adding defendant GM).[2]

Yurkerwich provides two models to determine damages referred to as Approach A and Approach B. During oral arguments on a motion to sever, the parties argued over the reliability of Approaches A and B for applying different royalty rates to each defendant. Compare Dkt. No. 129 at 97:9-122:16, with Dkt. No. 189-2 ¶¶ 465-66. In the order on the motion to sever, the Court found both Approaches A and B untenable in light of *California Ins. of Tech. v. Broadcom Ltd.*, 25 F.4th 976, 993-'94 (Fed. Cir. 2022) for applying different royalties down the stream of commerce. Dkt. No. 141 p 4-5. The Court granted plaintiff leave to serve a supplemental report and defendants leave to move to exclude the supplemental report.

## II.   Legal Standard

An expert witness may provide opinion testimony if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

Federal Rule of Evidence 702 requires a district court to make a preliminary determination, when requested, as to whether the requirements of the rule are satisfied with regard to a particular expert's proposed testimony. See *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999); *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592–93 (1993). District courts are accorded

---

[2] For procedural reasons not relevant here, Case No. 2:22-CV-00126 ("Case '126") was born by severance of the instant defendants from Case No. 2:21-CV-00054 ("Case '54). Compare Case '54 Dkt. No. 467 with Case '126 Dkt. 1.

broad discretion in making Rule 702 determinations of admissibility. *Kumho Tire*, 526 U.S. at 152 ("the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable"). Although there are various factors that the district court may consider in determining admissibility the ultimate inquiry is whether the expert's testimony is sufficiently reliable and relevant to be helpful to the finder of fact and thus to warrant admission at trial. *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010).

Importantly, in a jury trial setting, the Court's role under Daubert is not to weigh the expert testimony to the point of supplanting the jury's fact-finding role; instead, the Court's role is limited to that of a gatekeeper, ensuring that the evidence in dispute is at least sufficiently reliable and relevant to the issue before the jury that it is appropriate for the jury's consideration. See *Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1391–92 (Fed. Cir. 2003) (applying Fifth Circuit law) ("When, as here, the parties' experts rely on conflicting sets of facts, it is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony."); *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 249–50 (5th Cir. 2002). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

### III.    Analysis

After consolidating the motions to exclude to account for the supplemental report, defendants argue the following: (A) that Approaches A and B fail to properly apportion to the value of the patented feature, Dkt. No. 162 pp 7-12; (B) that the supplemented Approach B still violates *Broadcom*, 25 F.4th at 993-'94, Dkt. No. 252; and (C) that Approaches A and B impermissibly double count units, Dkt. No. 162 p 15. In light of the supplement, the Court will first address whether Approach B still violates *Broadcom*, 25 F.4th at 993-'94.

### A. *California Ins. of Tech. v. Broadcom Ltd.* and Approach B

Pursuant to the supplemental report, Approach B applies a $4.64 royalty rate per unit. In *Broadcom*, the Federal Circuit was presented with the issue of different royalty rates applied to different defendants in a supply chain. 25 F.4th at 993-'94. The Federal Circuit reiterated that "[i]t is well settled that a reasonable royalty is what a willing licensor and a willing licensee would have agreed to at a hypothetical negotiation just before infringement began." *Id.* (citing *Carnegie Mellon Univ. v. Marvell Tech. Grp.*, 807 F.3d 1283, 1303-1304 (Fed. Cir. 2015)). It then found that "there is nothing in the record to suggest that Broadcom and Apple would have been willing to negotiate [separately leading to vastly different royalty rates for the same chips] rather than to more conventionally negotiate a single license at a single rate for the same chips." *Id.* Because the supplemental report consolidated the disparate royalty rates into a unified rate, *Broadcom* is no longer applicable.

Despite the unified rate, Defendants argue that Arigna impermissibly considers the value of the accused product to the customer defendants, Dkt. No. 252 pp 6-7, and impermissibly assumes that Continental would have knowledge of this value at the hypothetical negotiation date even though sales of the accused product to customer defendants occurred years after the hypothetical negotiation date. However, both concepts fall squarely within *Georgia-Pacific* Factor 11 and the book of wisdom. *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F.Supp. 1116, 1120 (S.D.N.Y. 1970) (Factor 11 considering "the extent to which the infringer has made use of the invention; and any evidence probative of the value of that use."); *Sinclair Ref. Co. v. Jenkins Petroleum Process Co.*, 289 U.S. 689, 697 (1933) ("The use that has been made of the patented device is a legitimate aid to the appraisal of the value of the patent at the time of the breach… Here is a book of wisdom that courts may not neglect."); *Lucent Technologies, Inc. v. Gateway, Inc.*,

580 F.3d 1310, 1333-34 (applying the book of wisdom under *Georgia-Pacific* Factor 11). Accordingly, Approach B is not unreliable on the ground that it considers "[t]he use that has been made of the patented device." *Sinclair*, 289 U.S. at 697.

### B. Apportionment

Upon a finding of infringement, "the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer." 35 U.S.C. § 284. "A reasonable royalty may be a lump-sum payment not calculated on a per unit basis, but it may also be, and often is, a running payment that varies with the number of infringing units. In that event, it generally has two prongs: a royalty base and a royalty rate." *Virnetx, Inc. v. Cisco Systems, Inc.*, 767 F.3d 1308, 1326 (Fed. Cir. 2014).

In the context of a multi-component product containing at least one feature covered by the patents in suit, the Federal Circuit has "held that apportionment can be addressed in a variety of ways, including 'by careful selection of the royalty base to reflect the value added by the patented feature [or] ... by adjustment of the royalty rate so as to discount the value of a product's non-patented features; or by a combination thereof.'" *Exmark Mfg. Co. Inc. v. Briggs & Stratton Power Prod. Grp., LLC*, 879 F.3d 1332, 1348 (Fed. Cir. 2018) (citing *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014)). "The essential requirement is that the ultimate reasonable royalty award must be based on the incremental value that the patented invention adds to the end product." *Id.*; *Ericsson*, 773 F.3d 1226. ("[W]here multi-component products are involved, the governing rule is that the ultimate combination of royalty base and royalty rate must reflect the value attributable to the infringing features of the product, and no more.") (citing *Virnetx*, 767 F.3d 1326).

When apportioning through the royalty base, "it is generally required that royalties be based not on the entire product, but instead on the 'smallest salable patent-practicing unit.'" *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 67 (Fed. Cir. 2012) (citing *Cornell Univ. v. Hewlett–Packard Co.,* 609 F.Supp.2d 279, 283, 287–88 (N.D.N.Y.2009)). "Where the smallest salable unit is, in fact, a multi-component product containing several non-infringing features with no relation to the patented feature…, the patentee must do more to estimate what portion of the value of that product is attributable to the patented technology." *Virnetx, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1327 (Fed. Cir. 2014). This approach reduces the risk that the patentee will be compensated for non-infringing components and reduces the risk of misleading the jury that results from undue emphasis on the value of the multi-component product. *Commonwealth Sci. & Indus. Research Organisation v. Cisco Sys., Inc.*, 809 F.3d 1295, 1302 (Fed Cir. 2015) ("*CSIRO*").

"The entire market value rule is a narrow exception to this general rule," *LaserDynamics*, 694 F.3d at 67, "allow[ing] for the recovery of damages based on the value of an entire apparatus containing several features, when the feature patented constitutes the basis for customer demand," *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1336 (Fed. Cir. 2009) (quoting *TWM Mfg. Co. v. Dura Corp.,* 789 F.2d 895, 901 (Fed. Cir. 1986)). "If it can be shown that the patented feature drives the demand for an entire multi-component product, a patentee may be awarded damages as a percentage of revenues or profits attributable to the entire product." *LaserDynamics*, 694 F.3d at 67 (citing *Rite–Hite Corp. v. Kelley Co., Inc.,,* 56 F.3d 1538, 1549, 1551 (Fed. Cir. 1995). "It is not enough to merely show that the [patented feature] is viewed as valuable, important, or even essential to the use of [the multi-component product]. Nor is it enough to show that [the multi-component product] without [the patented feature] would be commercially unviable" *Id.* at

6

68. "[W]hether the presence of that [patented] functionality is what motivates consumers to buy [the mulit-component product] in the first place" is the "degree of proof that must exist to support an entire market value rule theory." *Id.*

When apportioning through the royalty rate, the Federal Circuit recognizes that "one possible way to do this is through a proper analysis of the *Georgia-Pacific* factors." *Exmark*, 879 F.3d at 1348-49 (citing *AstraZeneca AB v. Apotex Corp.*, 782 F.3d 1324, 1338 (Fed. Cir. 2015)). "[T]he standard *Georgia–Pacific* reasonable royalty analysis takes account of the importance of the inventive contribution in determining the royalty rate that would have emerged from the hypothetical negotiation." AstraZeneca AB v. Apotex Corp., 782 F.3d 1324, 1338 (Fed. Cir. 2015). When the royalty rate is derived from "sufficiently comparable" license agreements, the "method is typically reliable" as consistent with the *Georgia-Pacific* factors. *CSIRO*, 809 F.3d at 1303.

### i. Royalty Base

Continental argues that both Approaches A and B are unreliable for failing to properly apportion because Arigna does not contend or present evidence of an entire market value approach for both Approaches A and B and because the royalty base and rate of Approaches A and B fail to eliminate features not covered by the '318 Patent. Under Approach A, Yurkerwich uses as a royalty base Continental's sale price of the ARS4 radar module to the various other defendants, Dkt. No. 189-2 ¶ 368, whereas under Approach B Yurkerwich uses as a royalty base revenues derived from the MSRP cost of radar technology safety packages assigned by the vehicle manufacturing defendants for their vehicles, *Id.* at ¶ 431. Continental argues that for both Approaches A and B, Arigna is not asserting an analysis under the entire market value rule and uses the ARS4 radar module (Approach A) or the MSRP of the technology packages (Approach B) for its royalty bases rather than the NPX chipset as the smallest saleable unit or the VCO contained within the chip set.

Dkt. No. 162 pp 8-10. Arigna argues in response that the smallest saleable patent practicing unit is the ARS4 radar module sold by Continental. Dkt. No. 189 p 6-7. Arigna further points to evidence that Continental does not sell what it contends is the SSPPU.

In determining the appropriate apportionment to the royalty base, Arigna argues that "absent the critical benefits provided by the [VCO] contained in the NXP MR2001 chip alleged to infringe the Patent-In-Suit, the broader [ARS4] radar system in which the chip is housed would not function at expected levels and may pose greater safety threats." Dkt. No. 189 p 7 (quoting Yurkerwich's Report, Dkt. No. 189-2, ¶¶ 426); See also Dkt. No. 189-2 ¶¶ 344, 365, 430, 458. Indeed, Yurkerwich relied on testimony from Continental's Expert that without the VCO the NPX chipset would not work properly and relied on testimony from Arigna's expert that "without any temperature compensation impacts of the oscillator, the calculations of the radar system would be less precise and could render the radar system as a whole unable to operate at expected levels, unable to allow for applications such as those listed above to function properly, and potentially present even more catastrophic safety risks to the driver, vehicle or surroundings." Dkt. No. 189-2 ¶¶ 426-428. Yurkerwich's report further provides that because the other components within the ARS4 would not operate correctly without the VCO alleged to practice the '318 Patent, Continental would have understood the importance of and potential revenue from a license to the '318 Patent at the hypothetical negotiation. Dkt. No. 189 pp 7-8; Dkt. No. 189-2 ¶¶ 463.

However, the primary method relied upon by Yurkerwich for apportionment is the comparability of the licenses (discussed below), which reflect a built-in apportionment for the reasons discussed in his report. This is simply not a case where the plaintiff is seeking a royalty based upon the entire market value of the defendant's products.

##### ii.     Royalty Rate

As previously mentioned, reliable apportionment may be achieved through the royalty base or rate or a combination of the two. *Exmark*, 879 F.3d at 1348.

Under Approach A, Yurkerwich opined on three agreements for a royalty rate, which Continental contests are not reliably comparable. According to conversations between Yurkerwich and Arigna's technical expert cited in Yurkerwich's report, the three agreements are comparable because they relate to safety technologies similar to that provided by the ARS4 radar module. Dkt. No. 189-2 ¶¶ 264-269; U.S. Patent No. 6,211,808 ("'808 Patent") (directed to a collision avoidance system for aircraft employing microwave technology); Dkt. No. ¶ 270-275; U.S. Patent Nos. 5,028,920 (later reissued into RE34,773), 4,797,673 and 4,864,298 (directed to a collision avoidance system for automobiles employing microwave technology); U.S. Patent No. 5,250,945 (directed to a collision avoidance system for a bus employing microwave technology). Dkt. No. ¶¶ 276-283; U.S. Patent No. 6,198,087 (directed to light sensors for use in lane assist applications). From the royalty rates applied across these license agreements, Yurkerwich derives an average 4.5% royalty rate and applies it to the sales price of the ARS4 radar module in Approach A. Dkt. No. 189-2 ¶ 368. Defendants argue that the license agreements are not comparable to establish an average royalty rate specific to capturing only the value of the invention of the '318 Patent without more apportionment. Dkt. No. 215 p 4. Such a position goes to the credibility of Yurkerwich's testimony. *Daubert*, 509 U.S. at 596.

Under Approach B, which operates also as a reasonableness check on Approach A, he starts with the value of the safety technology packages sold by the vehicle manufacturing defendants, Dkt. No. 189-2 ¶ 396-97, Yurkerwich applies a series of apportionment factors including an

9

"MSRP Adjustment" to reflect the price realized by each vehicle manufacturing defendant for the safety technology packages, *Id.* at ¶¶ 432-33, a "Feature Apportionment" as a percentage of safety technology packages provided by each vehicle manufacturing defendant dependent upon radar technologies over other technologies, *Id.* at ¶¶ 434-442, and a "Technology Apportionment" at 25% derived from the fact that radar is one of four types of related safety technologies further including vision, LiDAR (light detetection and ranging), and ultrasonic, *Id.* ¶¶ 443-453. Defendants argue these apportionment steps and particularly the Technology Apportionment of 25% percent are detached from the value of the VCO. Dkt. Nos. 162 pp 12-13, 215 p 5. Again, such a position goes to the credibility of Yurkerwich's report and testimony. *Daubert*, 509 U.S. at 596. The Court finds that his methodology is sufficiently reasonable and rooted in the facts of the case.

### C. Double Counting

Defendants also argue that Yurkerwich counts both as infringing units those units sold by Continental to the vehicle manufacturing defendants and those purchased by the vehicle manufacturing defendants from Continental. However, the Defendants do not identify any persuasive factual basis for the Court to clearly determine the presence or extent of any double counting by Yurkerwich. Dkt. No. 162 p 15. Arigna contends Yurkerwich's calculations exclude such numbers due to the patent exhaustion doctrine. Dkt. No. 189 p 14. Accordingly, there is a material dispute of fact as to whether and the extent to which Yurkerwich's report double counts accused units, which is best addressed on cross examination. *Daubert*, 509 U.S. at 596.

## IV.   Conclusion

For the reasons discussed above, defendants' motion to exclude the expert report of David E. Yurkerwich and the supplement thereto, **Dkt. No. 162, 252**, are **DENIED**.

**SIGNED this 24th day of October, 2022.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE